Matter of McHale (2020 NY Slip Op 02897)





Matter of McHale


2020 NY Slip Op 02897


Decided on May 14, 2020


Appellate Division, First Department


Per Curiam



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 14, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rolando T. Acosta, Presiding Justice, David Friedman, Rosalyn H. Richter, Barbara R. Kapnick Troy K. Webber, Justices.


M-8917

[*1]In the Matter of Jessica M. McHale, (admitted as Jessica Marie McHale), a suspended attorney: Attorney Grievance Committee for the First Judicial Department, Petitioner, Jessica M. McHale, Respondent.



Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Jessica M. McHale, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the Fourth Judicial Department on January 16, 2014.



Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Orlando Reyes, of counsel), for petitioner.
Sarah Diane McShea, Esq., for respondent.



PER CURIAM


Respondent Jessica M. McHale was admitted to the practice of law in the State of New York by the Fourth Judicial Department on January 16, 2014, under the name Jessica Marie McHale. At all times relevant to this proceeding, respondent practiced law under the firm name of Volks Anwalt Law, which maintained a business address within the First Judicial Department.
By order entered May 24, 2018, this Court granted the Attorney Grievance Committee's (Committee) prior reciprocal discipline motion and suspended respondent from the practice of law for a period of three months, effective June 25, 2018, and until further order of the Court (162 AD3d 117 [1st Dept 2018]). The Committee's motion was based upon an order entered June 2, 2016, by the United States Bankruptcy Court for the Western District of North Carolina which had disbarred respondent from practicing before that court for five years for mishandling a single debtor's case and engaging in the unauthorized practice of law in North Carolina (In re Banner, 2016 WL 3251886, 2016 Bankr LEXIS 2214 [WD NC, June 2, 2016, No. 15-31761]). Respondent remains suspended in New York.
In its current motion, the Committee again seeks an order imposing reciprocal discipline, pursuant to Judiciary Law § 90(2) and Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.13, predicated on an order by the Supreme Court of Florida of August 29, 2019, which disbarred respondent from the practice of law, with leave to seek readmission after five years.
Respondent consents to the imposition of reciprocal discipline but asks this Court to impose a sanction equivalent to the Florida disbarment, essentially a suspension for a period of five years, effective August 29, 2019, the date of her Florida disbarment, with reinstatement in New York contingent upon her readmission in Florida.
Respondent was admitted to the Florida Bar on or about February 19, 2015. In 2016, the Florida Bar commenced an investigation into respondent's conduct resulting in eight disciplinary charges filed against her. In July 2019, respondent submitted a petition for disciplinary revocation (PDR), with leave to seek readmission after five years, which Bar Counsel supported and which was submitted to the court.
By order of August 29, 2019, the Supreme Court of Florida granted the PDR, noting, inter alia, that "[d]isciplinary revocation is tantamount to disbarment."
The PDR set forth the circumstances that led to her disbarment. Specifically, in or about 2015, respondent, who had no substantive legal experience, was "recruited" by "a disbarred lawyer and two non-lawyers" for purposes of using her "license as an attorney" "to create a law firm' to be known as Volks Anwalt.'" Respondent served as the "managing partner" of the "multistate law firm which claimed to be headquartered in New York [but] the New York office was virtual. The only physical and functional office was in Jacksonville, Florida."
"[t]he operational concept was that Volks Anwalt would hire attorneys from around the country, on a contract basis, to represent clients in foreclosure, loan modification and bankruptcy cases. In each instance when Volks Anwalt retained a lawyer, the retained lawyer would be identified as a Volks Anwalt partner.' The partners' were to be compensated on a monthly basis for the activities performed.
"[] The only authority that these partners' had with respect to case management was simply that, i.e., management of the assigned case. They had no other authority within the Volks Anwalt firm.
"[] Most, if not all, documents generated and/or work performed was done by paralegals located in Jacksonville, Florida, not the partner.' The majority of this work was not supervised by an attorney.
"[] Clients were secured through internet advertising. They would execute a fee agreement and pay the fees to Volks Anwalt, not to the partner.'"
It became obvious that respondent "had essentially no control over the day-to-day [*2]operations of the... firm, or the individual cases in various states." Due to the firm's "failure to research or adhere to local state rules, the firm and [respondent] as Managing Partner, have been disciplined (suspended, disbarred and/or ordered to disgorge fees) in at least eight states" and the firm dissolved in February 2017. As a result of the firm structure, for which respondent took full responsibility, "numerous issues arose which resulted in the discipline of partners' in various jurisdictions, partners' not being compensated, etc. Virtually all these issues arose as a direct result of the concept and structure of Volks Anwalt which contravened various Rules Regulating the Florida Bar."
Respondent agreed to reimburse the Client Security Fund for any funds paid out for claims related to her misconduct and to pay any restitution and/or fees "ordered disgorged in any state, both personally and in her capacity as managing partner of Volks Anwalt before any application for readmission."
The Committee is now seeking reciprocal discipline based upon the Florida discipline, specifically, that respondent be disbarred for her misconduct. The Committee cites to the various Rules Regulating the Florida Bar that respondent was found to have violated and argues that analogous New York Rules of Professional Conduct (22 NYCRR 1200.0) include rules: 1.1 (competence), 1.2 (scope of representation), 1.3 (act with diligence), 1.4 (adequate communication), 1.5(a) (prohibition against excessive fee), 1.16 (terminating representation), 2.1 (exercise independent professional judgment), 3.2 (delay of litigation), 4.1 (truthfulness in statements to others), 5.1 (responsibilities of partners and supervisory lawyers), 5.3 (responsibility for conduct of nonlawyers), 5.4 (failure to maintain professional independence), 5.5 (unauthorized practice of law), and 8.4 (misconduct).
In support of disbarment, the Committee argues that as a general rule, in reciprocal disciplinary matters, we accord significant weight to the sanction imposed by the jurisdiction in which the charges were initially brought (see Matter of Peters, 127 AD3d 103, 109 [1st Dept 2015]; Matter of Cardillo, 123 AD3d 147, 150 [1st Dept 2014]; Matter of Jaffe, 78 AD3d 152, 158 [1st Dept 2010]).
Similar to the procedural posture of the case at bar, the Committee cites to Matter of Lewis (132 AD3d 1017 [3d Dept 2015]), where the Third Department reciprocally disbarred an attorney who converted client funds, following a Florida Supreme Court's order granting an uncontested disciplinary revocation, with leave to seek readmission after five years. The Committee also notes that this Court has imposed a four-year suspension as well as disbarment in cases comparable to respondent's matter (Matter of Schlissel, 170 AD3d 64 [1st Dept 2019]; Matter of Tarter, 156 AD3d 157 [1st Dept 2017]).
In consenting to reciprocal discipline, respondent argues that a suspension of five years (effective as of the date of the Florida revocation i.e. August 29, 2019) with reinstatement in New York contingent upon her readmission in Florida, rather than disbarment, is the practical equivalent of the Florida revocation. Respondent highlights the fact that she was a young lawyer with virtually no experience practicing law and no experience managing a firm who, within months of her 2015 Florida admission, was "recruited" by three unscrupulous nonlawyers (one of whom was a disbarred lawyer) to establish a "law firm." After it became a disaster, respondent closed the firm in August 2017 and ceased practicing law in any form, taking full responsibility for the problems, and voluntarily making restitution to firm clients and others, and cooperated with the Florida Bar. Respondent notes further that she has been suspended in New York since June 2018, and she has agreed to reimburse the Florida Client Security Fund for any monies paid out and any restitution and fees ordered disgorged before any readmission application.
After due deliberation, this Court hereby grants the Committee's motion to the extent of imposing reciprocal discipline, as it is warranted and consented to by respondent, and respondent is suspended from the practice of law for a period of five years, effective nunc pro tunc to August 29, 2019, and until further order of this Court.
All concur.
Order filed. [May 14, 2020]
The Committee's motion is granted to the extent of imposing reciprocal discipline pursuant to 22 NYCRR 1240.13 and suspending respondent from the practice of law in the State of New York for a period of five years, effective nunc pro tunc to August 29, 2019, and until further order of this Court.